PER CURIAM.
This cause is before us on appeal from a final order awarding workers’ compensation benefits. The employer and carrier (E/C) contend that the judge of compensation claims (JCC) erred in: (1) awarding temporary partial disability (TPD) benefits for the period July 27 through December 4 of 1990, although claimant did not perform a work search; (2) reserving jurisdiction on the issue of wage-loss benefits; and (3) authorizing Dr. Vliegenthart for a one-time evaluation.
The facts are that on March 27, 1990, claimant injured his back in a work-related accident; that he received TTD benefits from March 27 until July 26 of 1990, when Dr. Newman, the treating physician, released him to limited-duty work; that he neither returned to work nor performed a work search; that in December 1990, Newman reimposed a TTD rating and recommended surgery, which claimant refused; and that in July 1991, Newman determined claimant had reached maximum medical improvement (MMI) with a ten to twelve-percent permanent impairment rating and released him for sedentary work. Meanwhile, Dr. Seig and Dr. Theodotou each performed independent medical examinations, and determined that claimant was not a candidate for surgery and had reached MMI.
At final hearing on September 12, 1991, claimant testified that he was never advised to perform a work search and was never informed that he was released to return to work. However, claimant testified at the October 1990 deposition, that his lawyer informed him that day of the work-search requirement. Claimant also admitted receiving the E/C’s letter informing him that he had been released to work, but denied receiving the E/C’s letter concerning work-search requirements.
I. TEMPORARY PARTIAL WAGE-LOSS BENEFITS
The JCC awarded TPD wage-loss benefits for July 27 through December 4 of 1990, excusing the work search for the stated reasons that claimant was not informed of this requirement and because he was not informed of his work restrictions.
The award of TPD wage-loss benefits for July 27 through October 17 of 1990, is supported by competent, substantial evidence and is affirmed. The JCC, as fact-finder, was entitled to accept claimant’s *103 testimony that he did not receive the E/C’s letter informing him of the work-search requirement.
As to the period after October 1990, the 1990 amendment to section 440.-15(3)(b)2, Florida Statutes, controls. That amendment “alters the prior case law which established that, if the employer/carrier/servicing agent did not furnish the pertinent information and forms, an untimely filing would be excused.” Litvin v. St. Lucie County Sheriffs Department, 599 So.2d 1353, 1354 (Fla. 1st DCA1992). The amended version of section 440.-15(3)(b)2, Florida Statutes, “now predicates a claimant’s work-search responsibility upon actual notice, which was furnished through the advice of the claimant’s attorney.” Litvin, 599 So.2d at 1355. Therefore, claimant’s work search is not excused after October 1990.
Finally, the JCC’s finding that claimant was not informed of his work restrictions is contrary to claimant’s testimony that he knew that he was released for light, part-time-duty work. The award of TPD wage-loss benefits for the period of October 17 through December 4 of 1990, is therefore reversed.
II. WAGE-LOSS BENEFITS
The JCC reserved jurisdiction on the issue of wage loss for July 2 through September 12 of 1991. However, the pretrial stipulation shows that claimant sought wage-loss benefits for that period, and the parties agreed at the final hearing that these benefits were at issue. Therefore, the reservation of jurisdiction to determine entitlement to wage-loss benefits is error and must be reversed. Washington Square Associates v. Bourne, 408 So.2d 809, 811 (Fla. 1st DCA1982); Holland v. Courtesy Corp., 569 So.2d 780, 782 (Fla. 1st DCA1990). Further, since claimant testified that he knew he was released by Dr. Newman but did not submit wage-loss forms as required by section 440.15(3)(b)2, Florida Statutes (1990), the claim for wage-loss for July 2 through September 12 of 1991 must be denied.
III. AUTHORIZATION FOR MEDICAL EVALUATION
Finally, competent, substantial evidence does not support the JCC’s authorization of Dr. Vliegenthart to perform a one-time examination to assess claimant as a surgical candidate. Claimant has previously been seen by no less than three doctors, two of whom stated that claimant was not a candidate for surgery. No basis is stated for any additional medical evaluations, and therefore, the authorization is reversed.
Accordingly, the order is affirmed in part, reversed in part, and remanded for proceedings consistent herewith.
BOOTH, SHIVERS, and WEBSTER, JJ., concur.